UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**YENY SEVILA and,**
**ZADY SEVILA**

     **Plaintiffs,**

                                      **CASE NO.: 8:12-CV-2024-SDM-TBM**

**v.**

**THE FIRST LIBERTY INSURANCE**
**CORPORATION,**

     **Defendant.**

_____/

## PLAINTIFFS' DISPOSITIVE MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT

COMES NOW, Yeny Sevila and Zady Sevila, hereinafter "Plaintiffs", by and through the undersigned attorneys, and pursuant to Federal Rule of Civil Procedure 56, hereby file this Dispositive Motion for Summary Judgment and Incorporated Memorandum of Law in Support, and states to the Court that there is no question of fact, and that as a matter of law, Plaintiffs are entitled to Summary Judgment. Plaintiffs further state in support of the Motion:

## I.    INTRODUCTION

1.    The Complaint alleges a count of breach of an insurance contract issued by Defendant to Plaintiffs for the alleged failure to properly investigate and test for a sinkhole loss and sinkhole damage at the insured property and pay for all damages due to sinkhole loss. The dispute at issue is whether Defendant, The First Liberty Insurance Corporation (hereinafter "First Liberty") performed appropriate and statutorily complaint testing for sinkhole activity at the Sevila property, in light of the changes to Florida Statute 627.707, 627.7072, and 627.7073 which became effective on May 17, 2011.

1

## II.    UNDISPUTED FACTS

2.      Plaintiffs property located at 8017 N. Hale Avenue, Tampa, Florida (hereinafter the "insured residence") was insured with Defendant, under policy number H36-258-465256-100-5 with effective dates of February 27, 2010 through February 27, 2011. (See Exhibit "A" attached).

3.      Plaintiffs discovered damage to their property on May 31, 2010 and thereafter notified the Defendant of the potential sinkhole loss.

4.      The reported and acknowledged date of loss of May 31, 2010 falls within the effective dates of the subject insurance policy.

5.      The subject policy (as modified by the SPECIAL PROVISIONS - FLORIDA endorsement) provides coverage for a Sinkhole Loss as follows:

### SECTION I - PERILS INSURED AGAINST

The following perils are added.

**Sinkhole Loss**

**a.** Sinkhole Loss means structural damage to the building, including the foundation, caused by sinkhole activity. Contents coverage shall apply only if there is structural damage to the building caused by sinkhole activity.

**(1)** We will pay to stabilize the land and building and repair the foundation in accordance with the recommendations of a professional engineer and in consultation with you.

**b.** Sinkhole Activity means settlement or systemic weakening of the earth supporting such property only when such settlement or systemic weakening results from movement or raveling of soils, sediments, or rock materials into subterranean voids created by the effect of water on limestone or similar rock formation.

The **Section I – Earth Movement Exclusion** does not apply to this peril.

2

6.       Defendant retained the services of SDII Global Corporation (hereinafter "SDII") to perform "Structural Damage Evaluation" to determine if "structural damage" was present at the Sevila property using the "definitions of structural damage included in Chapter 627 of the Florida Statutes as well as the traditional definition used by engineers prior to the May 17, 2011 revisions to Florida Statutes." (See Exhibit "B" attached at p. ii).

7.       On August 24, 2011, SDII issued a report concluding "it is SDII's opinion, within a reasonable degree of professional probability, that structural damage as defined by §627.706(2)(k) Florida Statutes does not exist at the Sevila property." (Exhibit "B" at p. iv and 3-1).

8.       In response to the SDII report, Defendant issued a denial letter to the Plaintiffs, through their predecessor counsel, dated August 25, 2011 on the grounds that the damage observed at the residence was not "structural damage." (See Exhibit "C" attached)

9.       On January 16, 2013, counsel for the Plaintiffs filed a Civil Remedy Notice of Insurer Violation notifying Defendant of its deficiencies and bad faith claims handling. (Exhibit "D" attached).

10.       Thereafter, Plaintiffs filed the instant Complaint for breach of contract.  It is Plaintiffs' position that the policy, Florida Statutes in effect at the inception of the policy and on the date of loss do not define "structural damage" and that First Liberty's application of the 2011 amendments to Florida Statutes, chapter 627 and a technical definition of "structural damage" is inappropriate, and in derogation of Florida law.

11.       There is no dispute as to any material fact, and the matters before the court are purely issues of law to be decided by the Court.

WHEREFORE, the Plaintiffs, YENY SEVILA and ZADY SEVILA respectfully requests the Court enter Final Summary Judgment in favor of the Plaintiffs on the grounds that the issue is one of contract interpretation for the Court and application of Florida law, and there are no genuine issues of fact that are material to the claims.

## II.   LEGAL BASIS FOR GRANTING SUMMARY JUDGMENT

12.     First Liberty, without any legal basis or contractual basis, has used the 2011 statutory definition of the term "structural damage", as well as a technical definition of "structural damage" to wrongfully deny Plaintiff's claim for damage to the Insured Residence. First Liberty, in doing so, has avoided its obligation to complete a statutorily compliant subsidence investigation to confirm or rule out sinkhole activity at the insured property.

13.     First Liberty and its retained expert, SDII, have used the new statutory definitions for "structural damage" and a technical definition of structural damage, not supported by the insurance policy or Florida law as it existed at the time the policy took effect and on the date of loss in order to exclude coverage for the loss.

14.     The term "structural damage" is not defined in the insurance policy, nor was it defined in Florida Statute, §627.706 (2010) at the time the policy was issued.

15.     Numerous Circuit Courts in the State of Florida, as well as United States District Court for the Middle District of Florida have addressed this very issue and have uniformly held that the amendments to Florida Statute 627.706 cannot be applied retroactively to policies issued prior to May 17, 2011. See; Bay Farms Corp. v. Great American Alliance Ins. Co., 2011 WL 6099367 (M.D. Fla. 2011); See also; Cunningham v. Liberty Mutual Fire Ins. Co., 8:12-cv-

01398-T35-TBM (M.D. Fla. 2013) and <u>Zawadzki v. Liberty Mut. Fire Ins. Co.</u>, Case No. 8:12-cv-950-T-30MAP (M.D. Fla. 2012)[1]

16.     Additionally, this the United States District Court for the Middle District of Florida has ruled that when the policy and Florida law do not define the term "structural damage", a technical definition cannot be applied and the term must be taken at its plain meaning of "damage to the structure." <u>See Ayres v. USAA Cas. Ins. Co.</u>, 2012 WL 1094321, M.D. Fla., April 2, 2012 and <u>Cunningham v. Liberty Mutual Fire Ins. Co.</u>, 8:12-cv-01398-T35-TBM (M.D. Fla., May 29, 2013).

17.     Plaintiffs, Yeny Sevila and Zady Sevila, hereby file this Motion and requests the Court determine, as a matter of law, that neither Florida Statute 627.706 (2011), nor SDII's technical definition of "structural damage" apply to Plaintiffs' claim.

## III.   INCORPORATED MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S \ MOTION FOR SUMMARY JUDGMENT

### A.   Standard on Motions for Summary Judgment

18.     Summary judgment is appropriate if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law, Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>. 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  An issue is "material" only if it is a legal element of the claim under applicable substantive law which might affect the outcome of the case. Likewise, an

---

[1] See also, <u>Prince v. Lib. Mut. Fire Ins. Co.</u>, Case No. 8:12-cv-911-T-26TBM (M.D. Fla. August 7, 2011), while not reaching merits on Summary Judgment Motion due to issue being moot, finding the Court's rulings in <u>Bay Farms</u> and <u>Ayres v. USAA Casualty Ins. Co.</u> 2012 WL 1094321 (M.D. Fla. Apr. 2, 2012) extremely persuasive; <u>Leon v. The First Liberty Insurance Corporation</u>, Case No. 8:12-cv-01613-JSM-MAP (M.D. Fla. November 6, 2012); <u>Glowacki v. Liberty Mutual Fire Insurance Company</u>, Case No.: 8:12-cv-02422-JSM-TGW (M.D. Fla. December 13, 2012); <u>Argust v. Liberty Mutual Fire Insurance Company</u>, Case No.: 8:12-cv-01519-AEP (M.D. Fla. November 26, 2012); <u>Garcia v. First Liberty Insurance Corporation</u>,case No.: 8:12-cv-00771-JSM-TGW (M.D. Fla. October 29, 2012); <u>Martello v. Liberty Mutual Fire Insurance Company</u>, 8:12-cv-00909-JSM-EAJ (M.D. Fla. December 4, 2012); <u>Avramides v. Liberty Mutual Fire Insurance Company</u>, Case No.: 8:12-cv-02104-JDW-TGW (M.D. Fla. December 12, 2012); <u>Testa v. First Liberty Insurance Corporation</u>, 8:12-cv-00190-EAJ (M.D. Fla. October 1, 2012) and <u>Cunningham v. Liberty Mut. Fire Ins. Co.</u>, 8:12-cv-01398-T35-TBM (M.D. Fla. May 29, 2013). (Composite Exhibit "E").

issue is "genuine" only if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. In ruling on a motion for summary judgment, the Court must view evidence and factual inferences drawn therefrom in the light most favorable to the non-moving party. Celotex, 477 U.S. at 322-23, 106 S.Ct. 248 However, even though the burden on movant is great, the opposing party has a duty to present affirmative evidence in order to defeat motion for summary judgment. A mere "scintilla" of evidence in favor of the non-moving is not enough. Heritage Corp. of S. Florida v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, F.Supp.2d 1294, 1297-98 (S.D. Fla. 2008), affirmed, 361 Fed.Appx. 986 (11th Cir. 2010).

**B.      Legal Argument**

19.     First Liberty policy number H36-258-465256-100-5 with effective dates of February 27, 2010 through February 27, 2011 defines "sinkhole loss", but it does not define "structural damage."

**i.      The 2011 Amendment to Florida Statute 627 cannot be applied retroactively.**

20.     The only way Defendant's testing could arguably be valid and statutorily compliant is if the 2011 amendment to Florida Statute Florida Statutes 627.707, 627.7072, and 627.7073 applies retroactively to Plaintiffs' policy that took effect on February 27, 2010. However, to do so would be in violation of the Florida Constitution.

21.     On point is Bay Farms Corporation v. Great American Alliance Insurance Company, 835 F. Supp. 2d 1227 (M.D. Fla. 2011)[2]. In Bay Farms Corporation, the United States District Court for the Middle District of Florida analyzed the attempted retroactive application of the 2011 amendments that went into effect on May 17, 2011. This amendment redefined the

---

[2]  Similarly, Florida Circuit Courts have come to the same conclusion in Jackson v. USAA Casualty Insurance Company, 10-13586, Div. A (Thirteenth Judicial Circuit, in and for Hillsborough County, Florida); Acosta v. Liberty Mutual Fire Ins. Co., 51-2010-CA-8843-ES (Sixth Judicial Circuit, in and for Pasco County, Florida); and Appleton v. Liberty Mutual Fire Ins. Co., H-27-CA-11-1506 (Fifth Judicial Circuit, in and for Hernando County, Florida). (Composite Exhibit "E").

meaning of a sinkhole loss under a property insurance policy.  The 2011 amendment was stricter than the prior meaning of a sinkhole loss and if the 2011 amendment applied, Plaintiff's sinkhole claim could have been barred.  The court held that whether such a statute can be applied retroactively, the court must apply a two-pronged analysis, which is first "whether there is clear evidence of legislative intent to apply the statute retroactively" and "[i]f the legislation clearly expresses an intent that it apply retroactively, then the second inquiry is whether retroactive application is constitutionally permissible." *Id.*

22.     The court first had to determine whether the 2011 amendment was procedural or substantive, because the two-pronged analysis only applies to substantive changes in law.  The court held that the 2011 amendment was substantive because it "create[s] new rights or tak[es] away vested rights.  That is, 'if the statute accomplishes a remedial purpose by creating new substantive rights or imposing new legal burdens, the presumption against retroactivity would still apply.'" *Id.*  The court went on to state that:

> 'the statute in effect at the time an insurance contract is executed governs substantive issues arising in connection with that contract.'
>                     . . .
>
> [Defendant's] argument to the contrary, a plain reading of the 2011 Amendment reveals that the new definition of 'structural damage' is a substantive change as its retroactive application would adversely affect and impair the right of sinkhole policyholders, including [plaintiff].
>                     . . .
>
> In short, the 2011 Amendment does more than just clarify a statutory definition – it adds a new definition of 'structural damage' that would substantially limit an insurance company's liability for damage resulting from sinkholes by narrowing the definition of a covered 'sinkhole loss.'

*Id.* Finally, the court held that "[m]ore importantly, retroactive application of the 2011 Amendment would directly impact the rights of private parties to insurance contracts in Florida." *Id.*

23.     Therefore, because the 2011 amendment was a substantive change, the court held that the two-prong analysis for retroactivity must be applied. As for the first prong, regarding whether there is clear intent by the legislature to apply the amendment retroactively, the court found that it was not "clear and unambiguous" as to whether the amendment should be applied retroactively. *Id.* This alone was enough to hold the 2011 amendment to not be retroactive. However, the court went on to discuss whether or not the 2011 amendment was constitutional. The court found the 2011 amendment to not be constitutional, as applying it retroactively would violate the plaintiff's due process. The court held that:

> Retroactive application of a civil statute ordinarily transgresses constitutional limitations on legislative power 'if the statute impairs vested rights, creates new obligations, or imposes new penalties.
>
> . . .
>
> The Supreme Court of Florida has repeatedly recognized that 'subsequent legislation which diminishes the value of a contract is repugnant to [the Florida] Constitution.'
>
> . . .
>
> 'Any conduct on the part of the legislature that detracts in any way from the value of the contract is inhibited by the Constitution.
>
> . . .
>
> In addition, [defendant's] contention that this Court should apply the 2011 Amendment to preclude [plaintiff] from recovering on a claim (and potential cause of action) that accrued prior to the effective date of the 2011 Amendment is contrary to the general rule that once a cause of action has accrued, the right to pursue that cause of action is generally considered a vested right.

. . .

> In this case, [plaintiff] had a vested contractual right to coverage for 'sinkhole loss' as that term was understood when the Policy was issued (or, at the very latest when the loss occurred and the claim was submitted).

. . .

> Thus, the constitutional prohibitions against retroactive application of legislation impairing vested and contractual rights precludes the Court from applying the newly adopted definition of 'structural damage' to effectively extinguish [plaintiff's] rights under the Policy.

Id. The same Court reaffirmed its ruling in Bay Farms Corporation in Zawadski v. Liberty Mutual Fire Insurance Company, Case No. 8:12-cv-950-T-30MAP (M.D. Fla. 2012).

24.    The holding and rationale of Bay Farms Corporation and Zawadski and their ilk is not isolated, but is continually seen throughout Florida case law. See, e.g., American Optical Corporation v. Spiewak, 73 So. 3d 120, 132-133 (Fla. 2011) (this case dealt with the question of whether the 2005 Florida Asbestos and Silica Compensation Fairness Act could be applied retroactively to limit claims for damages that resulted from asbestos exposure.  The Florida Supreme Court held that it "has invalidated retroactive applications of statutes that have attempted to substantively alter the existing law. . . this Court has held that statutes that operate to abolish or abrogate a preexisting right, defense, or cause of action cannot be applied retroactively. . . Retroactive application of the Act here would operate to completely abolish the [plaintiff's] vested rights in accrued causes of action. . . For this reason, we conclude that the Act cannot be constitutionally applied to them. . . because it violates the due process clause of the Florida Constitution."); Florida Insurance Guaranty Association, Inc. v. Devon Neighborhood Association, Inc., 67 So. 3d 187, 195 (Fla. 2011) (the Florida Supreme Court held that "[t]he

presumption against retroactive application is a well-established rule of statutory construction that is appropriate in the absence of an express statement of legislative intent because 'a presumption against retroactivity will generally coincide with legislative and public expectations. Requiring clear intent assures that [the legislature] itself has affirmatively considered the potential unfairness of retroactive application and determined that it is an acceptable price to pay for the countervailing benefits. Such a requirement allocates to [the legislature] responsibility for fundamental policy judgments concerning the proper temporal reach of statutes, and has the additional virtue of giving legislators a predictable background rule against which to legislate.'" The Florida Supreme Court went on to confirm the necessity of the two-prong analysis when determining whether an amendment can be applied retroactively.); Mendez v. Progressive Express Insurance Co., Inc., 35 So. 3d 873, 876-877 (Fla. 2010) (the Florida Supreme Court held that "we look at the date the insurance policy was issued and not the date that the suit was filed or the accident occurred, because 'the statute in effect at the time an insurance contract is executed governs substantive issues arising in connection with that contract.'" The Florida Supreme Court went on to confirm the necessity of the two-prong analysis when determining whether an amendment can be applied retroactively); State Farm Mutual Automobile Insurance Company v. Lee, 678 So. 2d 818, 819-820 (Fla. 1996) (the Florida Supreme Court held that the statute of limitations does not "begin[] to run on the date of the accident" but "begins to run on the date of the insurer's alleged breach of contract"); Lumbermens Mutual Casualty Company v. Ceballos, 440 So. 2d 612, 613 (Fla. 3d DCA 1983) (holding that "[i]t is well settled in Florida that the statute in effect at the time the insurance contract is executed governs any issues arising under the contract."); Hausler v. State Farm Automobile Insurance Company, 374 So. 2d 1037, 1038 (Fla. 2d DCA 1979) (holding that "Article I, Section 10, of the Florida Constitution

prohibits the legislature from passing any law which impairs the obligation of a contract. In other words, where the statute in question was not in effect at the time of contracting, it cannot be retroactively applied to alter the obligations of that contract").

25.     Here, similar to Bay Farms Corporation, Zawadski, Devon Neighborhood Association, Inc. and Mendez, the two-prong analysis must be applied to determine whether the 2011 amendment to Florida Statutes 627.707, 627.7072, and 627.7073 can be applied to the Plaintiffs' claim for damage to their home due to suspected sinkhole activity. This is because the 2011 amendment is a substantive change of the law, not a procedural change, as it "create[s] new rights or tak[es] away vested rights." Bay Farms Corporation, 835 F. Supp. 2d 1227. Here, it would be taking away the vested right to a full subsidence investigation regardless of any determination by First Liberty's experts, SDII regarding the extent of any observable damage and whether it meets the new defined structural damage requirements. Therefore, we must analyze the two prongs.

26.     The first prong is whether there is clear intent by the legislature to apply the amendment retroactively. A close examination of the legislation notes of the 2011 amendment reveals that there is no mention of whether the amendment should or should not apply retroactively. See, e.g., 2011 Fla. Sess. Law Serv. Ch. 2011-39 (C.S.C.S.C.S.S.B. 408). Therefore, at best, it is ambiguous and unclear as to whether the legislature intended for this amendment to apply retroactively. As there is not "clear evidence of legislative intent to apply the statute retroactively", the 2011 amendment fails the first prong and cannot be applied retroactively to this lawsuit. This is further evidenced by the numerous cases cited above that stand for the proposition that a statute in effect at the time the insurance contract is executed governs any issues arising under the contract.

11

27.    Even if there was clear intent, which Plaintiffs deny, the 2011 amendment still fails the second prong and, therefore, cannot be applied retroactively.   Applying the 2011 amendment to the current claim would be unconstitutional as violating the Plaintiffs' due process rights. When the Plaintiffs purchased the subject Policy on February 27, 2010 (*see* Exhibit "A"), Florida Statutes, §627.707 would have required the following from First Liberty upon receipt of a claim due to suspected sinkhole activity:

> 627.707 Standards for investigation of sinkhole claims by insurers; nonrenewals.—Upon receipt of a claim for a sinkhole loss, an insurer must meet the following standards in investigating a claim:
>
> (1) *The insurer must make an inspection of the insured's premises to determine if there has been physical damage to the structure which may be the result of sinkhole activity.*
>
> (2) *Following the insurer's initial inspection, the insurer shall engage a professional engineer or a professional geologist to conduct testing as provided in s. 627.7072 to determine the cause of the loss within a reasonable professional probability and issue a report as provided in s. 627.7073, if:*
>
> (a) *The insurer is unable to identify a valid cause of the damage or discovers damage to the structure which is consistent with sinkhole loss; or*
>
> (b) *The policyholder demands testing in accordance with this section or s. 627.7072.*
>
> Fla. Stat. §627.707 (2010) Emphasis added.

The 2011 amendments would require First Liberty upon receipt of the same claim to:

> 627.707 Investigation of sinkhole claims; insurer payment; nonrenewals.—Upon receipt of a claim for a sinkhole loss to a covered building, an insurer must meet the following standards in investigating a claim:
>
> (1) *The insurer must inspect the policyholder's premises to determine if there is structural damage that may be the result of sinkhole activity.*
>
> (2) *If the insurer confirms that structural damage exists but is unable to identify a valid cause of such damage or discovers that such damage is consistent with sinkhole loss, the insurer shall engage a professional engineer or a professional geologist to conduct testing as provided in s. 627.7072 to determine the cause of the loss within a reasonable professional probability and issue a report as provided in s. 627.7073,* only if sinkhole loss is covered under the policy. Except as provided in subsections (4) and (6), the fees and costs of the professional engineer or professional geologist shall be paid by the insurer.

Fla. Stat. §627.707 (2011) Emphasis added.

The 2011 amended Statute adds the requirement that First Liberty find the new statutorily defined "structural damage" as a threshold requirement to doing full subsidence investigation testing.   Under the 2010 version of §627.707, First Liberty would be required to do the full subsidence investigation testing if there was any physical damage to the property that *may* be due to sinkhole activity.   In practice, the only way to determine if such damage is due to sinkhole activity is to actually test for it, which SDII never did, using the "structural damage" threshold to avoid doing so.   Therefore, as the court in <u>Bay Farms Corporation</u>, held "the constitutional prohibitions against retroactive application of legislation impairing vested and contractual rights precludes the Court from applying the newly adopted [amendment] to effectively extinguish [plaintiff's] rights under the Policy." <u>Bay Farms Corporation</u>, 835 F. Supp. 2d 1227.   That is precisely what would happen here. Applying the 2011 amendment retroactively would extinguish Plaintiffs' rights under their Policy.

ii.      **<u>The Use of a Technical Definition for "Structural Damage" is Inappropriate</u>**

28.      In addition to denying Plaintiffs' claim based upon an improper retroactive application of the Chapter 627 (as amended) definitions of "structural damage", First Liberty also relied upon SDII's technical definition of "structural damage."   The United States District Court for the Middle District of Florida, in <u>Ayres v. USAA Cas. Ins. Co.</u>, and <u>Cunningham v. Liberty Mutual Fire Ins. Co.</u> have already rejected such application of a technical term for "structural damage" where it is undefined under the policy and Florida law at the time of the loss. See <u>Ayres v. USAA Cas. Ins. Co.</u>, 2012 WL 1094321, M.D. Fla., April 2, 2012. The Court held "Thus, this Court concludes, as a matter of law, that the undefined phrase, "structural

damage," within the sinkhole loss endorsement means "damage to the structure." Id.  Moreover,

"the Court further holds that, consistent with the numerous courts that have decided this issue,

the undefined phrase, "structural damage" in the Policy at issue is defined as "damage to the

structure."  See Cunningham v. Liberty Mutual Fire Ins. Co., 8:12-cv-01398-T35-TBM (M.D.

Fla., May 29, 2013).

29.     The policy and Florida law on the date the policy took effect and the date of loss

did not define "structural damage."  SDII used the following technical definition of "structural

damage" in evaluating the observable damage, aside from evaluating the observable damage

under the definitions contained in the 2011 amendments to Florida Statutes:

> "Damage wherein a load-bearing member, component, or structural assembly of a
> building or structure suffers a significant reduction in its capacity to support or
> transmit the loads for which it was designed."
> See Exhibit "B" at p. 2-6.

SDII confirmed that there was observable damage to the structure at the Cunningham residence.
Id.

30.     In light of the Court's ruling in Ayres, the undefined term "structural damage"

should be given its plain meaning of "damage to the structure" SDII confirmed damage to the

structure was observable during their testing.  Accordingly, Plaintiffs are entitled to additional

testing under the policy and Florida law to either confirm or eliminate sinkhole activity as a

cause of such damage.

## III.   CONCLUSION

31.     First Liberty retroactive application of the 2011 amendments to Florida Statute

Chapter 627, and application of a technical definition of "structural damage" led to an improper

and premature denial of Plaintiffs' insurance claim and is a breach of the insurance contract.

32.     As there is no dispute as to the material facts Plaintiffs are entitled to Summary Judgment as to its Count for Breach of Contract incorporated in the subject Amended Complaint.

**WHEREFORE**, Plaintiffs, YENY SEVILA and ZADY SEVILA, request the Honorable Court find that Chapter 627, Florida Statutes (2010) applies to their insurance claim, that they are entitled to a subsidence investigation in accordance with Florida Statute, §627.707 (2010), that "structural damage" means "damage to the structure" and enter Summary Judgment in Plaintiffs' favor against THE FIRST LIBERTY INSURANCE CORPORATION, find that Plaintiffs are entitled to an award of attorney's fees and costs under Florida Statute 627.428 (amount to be determined in a separate hearing), and grant any other relief the Court deems appropriate under the circumstances.

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished to the following, via electronic mail, to:  John V. Garaffa, Esq., jgaraffa@butlerpappas.com, and Matthew J. Lavisky, Esq.,  mlavisky@butlerpappas.com, Butler Pappas Weihmuller Katz Craig, LLP, 777 S. Harbour Island Boulevard, Suite 500 Tampa, Florida  33602 on this June 11, 2013.

Respectfully submitted,
***SHIELD LAW GROUP, P.A.***

  /s/ Jerry Jaramillo
JERRY JARAMILLO, ESQUIRE
Florida Bar Number: 85502
JOHN W. ADAMS, JR., ESQUIRE
Florida Bar Number: 50127
2100 West Dr. Martin Luther King Jr. Blvd.,
Tampa, Florida 33607
Telephone: (813) 871-5021
Facsimile: 813-871-5210
jjaramillo@ShieldLawPA.com
jadams@ShieldLawPA.com
yrodriguez@ShieldLawPA.com
aoliva@Shieldlawpa.com